# SMITH v. LOCKE.

1. The sheriff levied on twenty-five bales of cotton in a ware-house, as the property of J. against whom he had an execution. S. setting up a claim to fifteen bales of the cotton, procured fifteen other bales of cotton, and having obliterated the marks and brands, marked them to resemble the cotton levied on and substituted them secretly and without force, for fifteen bales of the cotton levied on, which he removed, and on the day of the sale claimed the cotton and forbade the sale. Held—

    1st. That if the sheriff elected to receive the substituted cotton for that originally levied on, S. was concluded by his own act from denying that it was not the cotton levied on.

    2d. That on a suit by S. against the sheriff for the fifteen bales of cotton, the only question was whether the property in the fifteen bales levied on was in S. or in the defendant in execution when the execution came into the sheriff's hands.

    3d. When the sheriff levies on property which does not belong to the defendant in execution, the true owner may retake possession if he can do so without committing a trespass.

ERROR to the County Court of Greene.

Trover by the plaintiff against the defendant in error, for fifteen bales of cotton.

Upon the trial it appeared that the defendant, as sheriff of Greene county, had levied on twenty-five bales of cotton, as the property of one Isaac Jordan, against whom he had an execution, and left the cotton so levied on, in the ware-house where he found it. It also appeared that the plaintiff claimed fifteen bales of the cotton by purchase from Jordan, before the levy, but whether before or after the execution came to the sheriff's hands, was not shown. It was also in proof that the plaintiff purchased from one McDonald fifteen bales of cotton, lying in the same ware-house, the marks and brands of which he obliterated, and put thereon marks and brands similar to those on the twenty-five bales of cotton levied on, and substituted the fifteen bales so altered and marked for fifteen bales of the cotton levied on, which he removed secretly and without the knowledge of the sheriff, but peaceably from the ware-house. On the day of the sale of the cotton the plaintiff claim-

ed the fifteen bales of cotton so substituted, and forbade the sale, showing that they were distinguishable from the remaining ten bales. There was no evidence that the plaintiff intended to practice a fraud on McDonald, or that the latter knew of his intention, the contract between them being, that he would pay for the cotton if he used it, if not he would return it. The sheriff proceeded and sold the cotton.

The Court charged the jury that if the plaintiff purchased the cotton from McDonald with some vague and general intent to use the cotton in a fraudulent and improper manner, it could not prevent the title from vesting in him. But that if the plaintiff purchased the cotton from McDonald with a fraudulent intent and on purpose to deceive the defendant, or to hinder and obstruct the due execution of legal process, he was not entitled to recover in this action, though McDonald was not defrauded or injured and had no knowledge of any fraudulent intent or purpose of the plaintiff—to which the plaintiff excepted, and judgment being rendered in favor of the defendant the charge is now assigned for error.

THORNTON and J. B. CLARKE, for plaintiff in error, insisted that the plaintiff had a right to take his own property peaceably from the sheriff, who was a trespasser in taking it, and that it made no difference that an artifice was resorted to, to obtain it. The charge of the Court that the intention of the plaintiff in making the purchase from McDonald could affect his title to the property is clearly wrong, and the cause must reversed.

JONES, contra, maintained that the plaintiff could not recover, because he claimed title to the property under a contract entered into for the purpose of defrauding the defendant and the case was not altered though there was no intention to defraud McDonald, as there was an intention to impede due course of public justice. [Chitty on Con. 224; Comyn on Con. 62; 11 Wheaton, 258; 1 Ala. Rep. 34; 2 Wilson 341.]

That the substitution of the fifteen bales for those levied on, was, under the circumstances, an exchange if the sheriff chose so to consider it, and the plaintiff could not be heard to say that

the sheriff had no right to sell. [16 Wendell, 514; 9 Cowen, 274; 7 Com. Dig. 521; 20 Viner's Ab. 515; 3 Camp. 108.]

ORMOND, J.—The delivery of an execution to the sheriff is an authority to take and sell a sufficiency of the property of the defendant in the execution to satisfy it, but he acts at his peril, and if he takes the property of another he is a trespasser.

When one is unjustly deprived of his property the law permits him to redress himself by the recaption of the property if he can do it without a trespass or breach of the peace, and this rule applies as well to a sheriff who takes property which does not belong to the defendant in execution as to any other person.

In the case of the Earl of Bristol v. Wilsmore and Page, [1 Barn. & Cress. 514,] it was held that where the sheriff had levied on a hundred head of sheep in the possession of the defendant in execution, which he had obtained by fraud, and which the former owner had by a stratagem regained the possession of, after the levy, that in the action by the sheriff against him, he could shew that the defendant in execution had obtained possession of the sheep with a preconceived design of not paying for them, that in such a case, as the property in the sheep did not pass to him, the sheriff had no right to levy on them as his sheep, and of course had no right to retain them against the real owner.

This is a very strong case to show that the right of recaption, when one has been deprived of his property unjustly exists against the sheriff as strongly as it does against any other person.

If then, the plaintiff had, under claim of title, possessed himself of the fifteen bales of cotton, after the levy, and the sheriff had brought trover to recover them, the question would have been whether the cotton was the property of Jordan, the defendant in execution, or of the plaintiff? Is the case varied by the substitution by the plaintiff of the fifteen bales of cotton obtained from McDonald for that originally levied on?

We must not permit the indignation which it is natural should be felt by the deception attempted in this case by the

plaintiff to warp our judgment, no matter how objectionable in a moral point of view his conduct may be, he has a right to insist that strict justice should be administered to him.

Where one intermixes his property with that of another, such as money, corn or hay, without his approbation or consent the law gives the entire property, without any account to him whose original dominion is invaded and endeavored to be rendered uncertain without his consent. [2 Black. Com. 406.] The design of the law is to prevent fraud, and although in strictness it applies only to those cases where from the minuteness of the several parts, or their resemblance to each other, the respective property of each cannot be distinguished in the general mass, yet the principle applies to this case. Where one throws gold into the crucible of another in which he is melting gold, he cannot reclaim his property, though he might be able to show the exact amount thus thrown in, nor will the plaintiff in this case be permitted to show that the cotton which he has substituted for that levied on by the sheriff is capable of being distinguished from the rest of the cotton. If the sheriff elects so to consider it, he may treat it as the cotton levied on by him, and the plaintiff will be concluded by his own act from controverting that fact.

Such being the law, the only question before the jury was, whether the fifteen bales of cotton levied on by the sheriff, as the property of Jordan, and claimed by the plaintiff was his property at the time the execution came to the sheriff's hands. It was wholly unimportant with what view the purchase was made from McDonald of the fifteen bates of cotton; whether such purchase was *bona fide* or made with intent to obstruct the due execution of legal process, was a matter entirely foreign to the question before the jury, which, as already stated was, whether that portion of the cotton levied on by the sheriff as the property of Jordan, which was claimed by the plaintiff, was or not his property when the execution came to the hands of the sheriff.

The determination of the question submitted to the jury by the Court, and upon which their verdict was made to depend, did not lead to the consequence supposed by the Court, for notwithstanding the purchase from McDonald may have been

with a fraudulent intent, the plaintiff's title to fifteen bales of the cotton levied on may have been perfect when the supposed *lien* of the execution attached.

For this error in the charge of the Court the judgment must be reversed and the cause remanded.